UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REENA MASELLI,

                              Plaintiff,

    -v-

TUCKAHOE UNION FREE SCHOOL
DISTRICT,

                             Defendant.

No. 17-CV-1913 (KMK)

OPINION & ORDER

Appearances:

Jonathan Lovett, Esq.
Law Office of Jonathan Lovett
White Plains, NY
*Counsel for Plaintiff*

Lewis R. Silverman, Esq.
Silverman and Associates
White Plains, NY
*Counsel of Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiff Reena Maselli ("Plaintiff"), brings this Action, pursuant to 42 U.S.C. § 1983, against Tuckahoe Union Free School District (the "District" or "Defendant") alleging retaliation against Plaintiff and her family in violation of Plaintiff's First Amendment right of intimate association. (*See generally* Am. Compl. (Dkt. No. 11).) Before the Court is Defendant's Motion To Dismiss the Amended Complaint (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(6). (*See* Def.'s Notice of Motion ("Mot.") (Dkt. No. 23).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from the Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

Plaintiff is an elementary school teacher. (Am. Compl. ¶ 3.) Years ago, Plaintiff's parents passed away leaving a "de facto small nuclear family" comprised of Plaintiff, her sister Barbara, Barbara's husband David Pope ("Pope"), two nephews, a niece, and three other siblings of Plaintiff. (*Id.* ¶ 4 (italics omitted).) Plaintiff has known Pope since she was 10 years old, (*id.* ¶ 6(b)), and Pope has been her brother-in-law for approximately twenty-five years. (*Id.* ¶ 6(c).) Plaintiff worked for Pope, and over the years the two "have enjoyed a very close personal and family relationship." (*Id.* ¶ 5.) Indeed, "Pope has been like a brother to Plaintiff," (*id.* ¶ 6), and they "have vacationed together as a family," (*id.* ¶ 6), and for a number of years, Plaintiff, Barbara, and Plaintiff's nephews and niece resided as a family with Pope, (*id.* ¶ 6(b)).

At some unidentified date, Pope, whose son was a student in the Tuckahoe Union Free School District, learned that certain sports coaches employed by the District were not certified by the State, which Plaintiff alleges was a mandatory requirement essential to the health and safety of students. (*Id.* ¶ 11.) Pope, on a date uncertain, then confronted Interim Superintendent of the District Charles T. Wilson ("Wilson") about the illegally hired coaches. (*Id.* ¶ 12.) Pope also told Wilson's secretary that if Wilson failed to remedy that situation Pope would make his concerns public. (*Id.*) Wilson's secretary allegedly told Wilson about Pope's threat of going public. (*Id.*)

In the spring of 2016, Plaintiff applied to the District for appointment as a fifth grade teacher in the District's Cottle School (the "School"). (*Id.* ¶ 14.) Plaintiff was among the

applicants interviewed and evaluated by the School's "upper grade screening committee." (*Id.* ¶ 15.) George Albano ("Albano"), the long-term principal of the School, was a member of the committee. (*Id.*) Plaintiff alleges "[t]he committee unanimously selected Plaintiff as the most outstanding candidate for appointment." (*Id.* ¶ 16.) Accordingly, on May 24, 2016, Albano recommended Plaintiff to Wilson for consideration to be appointed to the fifth grade teaching position in the School, and Wilson, allegedly unaware that she was a family member of Pope's, "unhesitatingly agreed to do so." (*Id.* ¶ 17.) On June 1, 2016, Wilson interviewed Plaintiff, and after "conclud[ing] that she was exceptionally well qualified for appointment," (*id.* ¶ 18), offered Plaintiff the fifth grade teaching position, (*id.* ¶ 19). Wilson and Plaintiff then executed a "Faculty Recommendation and Acceptance" agreement. (*Id.*)

Plaintiff alleges that "Carl Albano, George Albano's son and the then Assistant Superintendent of the District, informed Wilson that Plaintiff was a member of Pope's family." (*Id.* ¶ 20.) Wilson then "promptly" called Plaintiff and told her: "we have a bump in the road;" "I did not realize you were related to David Pope;" and "indicat[ed] that because of that familial relationship he had changed his intention regarding Plaintiff's appointment." (*Id.* ¶ 21.) Wilson allegedly informed Plaintiff that "[Pope] is controversial in the district so I will have to get back to you." (*Id.*)

Wilson, harboring intense dislike of both Pope and Plaintiff, allegedly "confronted Albano regarding them," stating that: "Pope is 'toxic;'" "Albano had 'lied to him' because he had failed to inform Wilson that Plaintiff was related to Pope;" "appointment of Plaintiff would constitute 'nepotism'"—which Plaintiff alleges was false because "neither Pope nor any other member of his family was then employed by the District;" and that "Plaintiff would not be hired because of her familial relationship with Pope." (*Id.* ¶ 23.) Plaintiff alleges that Wilson

3

attempted to justify rejecting Plaintiff "on the false premise that the selection process used for hiring teacher candidates was 'flawed.'" (*Id.* ¶ 24.) In a letter dated June 28, 2016, Wilson informed Plaintiff that he was recommending a different candidate for the position. (*Id.* ¶ 25)

Plaintiff alleges that the "District's vindictive refusal to hire Plaintiff in order to purposefully interfere with her family relationships, violated Plaintiff's First Amendment right of intimate association." (*Id.* ¶ 30.) Plaintiff alleges "Wilson's refusal to recommend Plaintiff for appointment" and "vindictive conduct" caused Plaintiff to suffer "financial loses [sic], to wit, damages in lost salary; and . . . benefits, as well as physical implications." (*Id.* ¶ 27–28.) Additionally, Plaintiff alleges Wilson "intentionally and/or recklessly caused Plaintiff, her sister, Pope, and other members of Plaintiff's family to suffer: [h]umiliation; [e]mbarrassment; [a]nxiety; [e]motional upset;. [d]iscomfort; [a]nger; and [o]utrage. (*Id.* ¶ 27.) Accordingly, Plaintiff seeks compensatory damages of $500,000, costs, and reasonable attorney's fees. (*Id.* ¶ 30.)

B.  Procedural History

Plaintiff filed the Complaint on March 15, 2017. (Compl. (Dkt. No. 1).) After receiving an extension of time to respond to the Complaint, (Dkt. Nos. 7, 8), on June 1, 2017, Defendant filed a letter requesting a pre-motion conference and indicating the grounds on which it would move to dismiss, (Dkt. No. 9). Plaintiff did not respond to the letter, and the Court set a briefing schedule for the Motion. (Dkt. No. 10.) On June 13, 2018, Plaintiff filed the Amended Complaint. (Am. Compl.)[1]

---

[1] On June 13, 2017, Plaintiff's counsel informed the Court that he was unable to respond to the letter requesting a pre-motion conference because he was hospitalized and his secretary had left. (Dkt. No. 15.) The letter also stated that the Amended Complaint resolved the issues raised in Defendant's pre-motion letter. (*Id.*)

On July 13, 2017, Defendant filed a second letter requesting a pre-motion conference. (Dkt. No. 18.) On July 19, 2017, Plaintiff filed an opposition to Defendant's pre-motion letter. (Dkt. No. 19.) The Court held a pre-motion conference on August 3, 2017, and adopted a scheduling order for the Motion. (Dkt. No. 22.) Defendant thereafter filed its Motion and accompanying papers on September 22, 2017. (Def.'s Mem. Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 25).) Plaintiff filed her opposition on October 27, 2018, (Pl.'s Mem. Law in Opp. to Mot. To. Dismiss ("Pl.'s Mem.") (Dkt. No. 27)), and Defendant filed its reply on November 10, 2017, (Def.'s Reply Mem. Law in Supp. of Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 30)).

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

5

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

Defendant moves to dismiss Plaintiff's interference with familial association claims under both the First and Fourteenth Amendments, arguing that Plaintiff's relationship with Pope

is not constitutionally protected, (Def.'s Mem. 8–16), and that the District's actions did not affect the alleged relationship, (*id.* at 16–21).

"The source of the intimate association right has not been authoritatively determined." *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999); *see also Piscottano v. Murphy*, 511 F.3d 247, 278 (2d Cir. 2007) (same). In *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), the Supreme Court suggested that the intimate association right is "a component of the personal liberty protected by the Due Process Clause," *Adler*, 185 F.3d at 42, while in *City of Dallas v. Stanglin*, 490 U.S. 19, (1989), the Supreme Court discussed the right to intimate association as grounded in the First Amendment, *see Adler*, 185 F.3d at 42 (discussing Supreme Court treatment of the right). Indeed, courts have analyzed claims that involved retaliation for the First Amendment activities of a family member under the First Amendment. *See id.* at 44 ("[A] spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *see also Talley v. Brentwood Union Free Sch. Dist.*, No. 08-CV-790, 2012 WL 3841396, *7–8 (E.D.N.Y. Sept. 5, 2012) (holding the First Amendment analysis applies to daughter's claim that she was not hired for a teaching position because of animus toward her father's conduct as school board member); *Garten v. Hochman*, No. 08–CV–9425, 2010 WL 2465479, at *3 (S.D.N.Y. June 16, 2010) ("Courts in th[e Second C]ircuit have acknowledged that a First Amendment right to intimate association is implicated where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member." (alteration and internal quotation mark omitted)); *Sutton v. Vill. of Valley Stream of New York*, 96 F. Supp. 2d 189, 192–93 (E.D.N.Y. 2000) (holding that the plaintiff had stated a claim for violation of his First Amendment right to

intimate association where he alleged that his employer harassed him in retaliation for his father's political activities).

"Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process." *Garten*, 2010 WL 2465479, at *4; *see also Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (describing the right as protected "as a fundamental element of personal liberty" and discussing it in the context "substantive due process cases" (internal quotation marks omitted)); *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103–04 (2d Cir. 1999) (discussing the right to integrity of familial relationships under the Fourteenth Amendment); *Pizzuto v. Cty. of Nassau*, 240 F. Supp. 2d 203, 208 n. 2 (E.D.N.Y. 2002) ("[B]ecause the freedom to associate guaranteed by the First Amendment protects associational interests related to speech and petition, and because those associational interests are not implicated in this case, [the court] find[s] that [the plaintiff's] claim must be examined under the Fourteenth Amendment, rather than the First Amendment."). The Court analyzes Plaintiff's claim under the First Amendment Amendment, as Plaintiff has alleged retaliatory action based on Pope's First Amendment activities.

The Supreme Court has recognized that associations warrant varying degrees of protection, with close family relationships involving "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life," evincing the strongest need for protection. *Roberts*, 468 U.S. at 619–20. The husband-wife relationship, as well as familial relationships between parents, siblings, and children have all been recognized

as warranting protection. *See, e.g.*, *Patel*, 305 F.3d at 136 (holding "the relationships at issue in this case—those between [plaintiff] and his father, siblings, wife, and children—receive the greatest degree of protection because they are among the most intimate of relationships"); *Berrios v. State Univ. of New York at Stony Brook*, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007) (noting "the right of intimate association encompasses the husband/wife relationship . . . as well as the familial relationships between parents, siblings and children"). Non-familial relationships, for the most part, do not fall within this First Amendment protection. *See Bates v. Bigger*, 192 F. Supp. 2d 160, 169–70 (S.D.N.Y.), *aff'd*, 56 F. App'x. 527 (2d Cir. 2002) (refusing to extend Constitutional protection to adulterous relationship between co-workers); *Berrios*, 518 F. Supp. 2d at 421 (holding alleged unfair treatment and retaliation in the terms of research assistant's employment based upon close working relationship with research professor did not implicate First Amendment right to freedom of association, as relationship was not one within category of protected intimate relationships).

While the Supreme Court "h[as] not attempted to mark the precise boundaries of this type of constitutional protection," *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987), the Constitution clearly does not protect all relationships, and "[t]he personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family" and paradigmatically include "marriage, childbirth, the raising and education of children and cohabitation with one's relatives," *Roberts*, 468 U.S. at 619 (internal citations omitted). Thus, to determine whether certain familial relationships warrant protection, a court must "assess such factors as cohabitation and the precise degree of kinship." *Patel*, 305 F.3d at 136. Other relevant factors include "size,

9

purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Bd. of Directors of Rotary Int'l*, 481 U.S. at 546 (finding "[t]he evidence . . . indicates that the relationship among Rotary Club members is not the kind of intimate or private relation that warrants constitutional protection"). "Determining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." *Roberts*, 468 U.S. at 620. "At the motion to dismiss stage, that assessment is necessarily premised upon the description of the relationship in the operative pleadings." *Stalter v. Cty. of Orange*, No. 15-CV-5274, 2016 WL 8711397, at *8 (S.D.N.Y. Aug. 5, 2016). Thus, the Court must determine whether Plaintiff has sufficiently alleged her relationship with Pope is the type of highly intimate relationship afforded constitutional protection.

The Second Circuit has not considered whether a sibling-in-law relationship falls within the category of constitutionally protected "intimate" relationships. However, Defendant cites to *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31 (2d Cir. 2014), the most recent Second Circuit decision to address a claim based on the right of intimate association, to argue Plaintiff's allegations fail to satisfy the bar set in *Roberts*. (Def.'s Mem. 10.) In *Matusick*, the court found a non-marital relationship was protected by the constitutional right to intimate association, because the couple was engaged "in a long-term romantic relationship, held themselves out as engaged and were recognized as such, maintained together a relationship with [the girlfriend's] children, and shared significant features of their private life together in anticipation of marriage." 757 F.3d at 58–59. Further, the court noted that "their relationship . . . was marked by the same

10

characteristics of deep attachment, commitment, and self-identification that *Roberts* and its progeny have viewed as characteristic of constitutionally protected intimate association." *Id.*

The Court agrees that in contrast, Plaintiff's allegations fall short of describing the type of relationship that is afforded constitutional protection. Plaintiff describes "a *de facto* small nuclear family" consisting of herself, Barbara, Pope, two nephews, a niece, and three other siblings of Plaintiff, and alleges Pope "has been like a brother to Plaintiff," but provides few details of the "very close personal and famil[y] relationship" they share other than: Plaintiff worked for Pope; they "vacationed together" some unspecified number of times; "resided as a family" for an unspecified duration at some unspecified time in the past; that Pope "has been involved in Plaintiff's life since Plaintiff was ten years old," and that he has been her brother-in-law for approximately twenty-five years. (Am. Compl. ¶¶ 4–6.) To begin, such "naked assertions" require "further factual enhancement" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration and internal quotation marks omitted). Additionally, Plaintiff has not alleged how her relationship with Pope is based on the "creation and sustenance of a family,"—given that marriage, childbirth, the raising and education of children, and cohabitation are not alleged to exist here. *Roberts*, 468 U.S. at 619. While Plaintiff has alleged that she and Pope lived together, the Amended Complaint lacks any detail regarding when and for how long the cohabitation lasted, nor does Plaintiff cite a single case suggesting that prior cohabitation in circumstances akin to those here is sufficient to justify constitutional protection. Nor has Plaintiff alleged how she and Pope "share[] not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts*, 468 U.S. at 619–20. As alleged, it is hard to distinguish Plaintiff's relationship with Pope from the type of relationship shared by close personal friends. Accordingly, Plaintiff's claim for intimate

11

association fails, as "courts in the Second Circuit have not accepted intimate association claims based on friendships." *Silverstein v. Lawrence Union Free Sch. Dist.*, 2011 WL 1261122, at *6 (E.D.N.Y. Feb. 15, 2011) (finding the plaintiff's allegations of 30-year friendship, where the two went to high school together, worked together as lifeguards as teenagers, continued to have a close personal association, lived five houses away from each other, and had near daily contact insufficient to allege a right of intimate association) (collecting cases), *adopted by* 2011 WL 1261114 (E.D.N.Y. Mar. 30, 2011).

The facts here more closely resemble *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988). While not binding, to the Court's knowledge, *Rode* appears to be the only Circuit Court opinion that has evaluated a sibling-in-law relationship of the kind alleged here. There, the Third Circuit held that a sister and brother-in-law relationship, where the siblings-in-law were coworkers and "good friends," "was not of the sort afforded special constitutional protection." *Id.* at 1205. Considering the *Roberts* factors, the court found:

> [The Plaintiff's] relationship with [her brother-in-law] was neither "selected," *compare Wilson v. Taylor*, 733 F.2d 1539, 1544 (11th Cir. 1984) (dating relationship protected), nor bound by blood, *see Trujillo v. Bd. of Cty. Comm'rs of City of Santa Fe*, 768 F.2d 1186, 1188–89 (10th Cir. 1985) (relationship with son or brother protected). Nor would her assertion that she and [her brother-in-law] were "good friends" appear sufficient to invoke protection where their relationship was not based on the "creation and sustenance of a family." *Roberts*, 468 U.S. at 619.

*Id.* Here, Plaintiff's allegations similarly fail to describe a personal relationship worthy of constitutional protection. Plaintiff's "relationship with [her brother-in-law] was neither 'selected,' . . . nor bound by blood." *Rode*, 845 F.2d 1205 (internal quotation marks omitted). And, while Plaintiff was allegedly "very close" with Pope, such an allegation is insufficient "to invoke protection where their relationship was not based on the creation and sustenance of a

12

family." *Id.* (internal quotation marks omitted); *see also Rodriguez v. Bd. of Trustees for State Colleges & Universities*, No. 92-CV-2448, 1994 WL 693431, at *4 (E.D. La. Dec. 8, 1994), *aff'd*, 66 F.3d 320 (5th Cir. 1995) (finding no intimate relationship where the plaintiff testified his relationship with his coach was "great" and she was a "mother figure" and was his "mentor," but the coach had other relationships and there was no sexual component to the relationship).

This is not to say that Plaintiff could *never* allege such a relationship with her brother-in-law. Rather, the Court finds at this time, Plaintiff's sparse allegations in the Amended Complaint do not cross the necessary threshold. Accordingly, the dismissal is without prejudice to Plaintiff filing a Second Amended Complaint.[2]

### III. Conclusion

For the following reasons, Defendant's Motion To Dismiss is granted. Moreover, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file a Second Amended Complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, her claims may be dismissed with prejudice.

---

[2] Because the Court finds Plaintiff has not alleged a constitutionally protected relationship between her and Pope, the Court does not address Defendant's argument that Plaintiff has not alleged the District's conduct had a likely effect on the alleged relationship.

The Clerk of the Court is directed to terminate the pending Motion. (Dkt. No. 23.)

SO ORDERED.

DATED: September 27, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE